This was a suit by William Miller in the Circuit court of Goochland, to enjoin the sale of a slave named Hezekiah, levied on by the sheriff under an execution which issued upon a judgment recovered by John Guerrant against William Lewis and Thomas Curd, upon a bond in which Lewis was principal and Curd was his surety. Miller, who was the father in law of Lewis, claimed the slave under a deed bearing date the 27th of November 1835, and admitted to record in the clerk's office of the County court of Goochland, by which Lewis, in consideration, as stated in the deed, of his having sold several negro slaves which he received by his wife, and of William Miller's having paid and advanced for him at various times the sum of 1084 dollars 93 cents in cash, and of his the said Miller's having loaned to him for two years past a young negro man about twenty years old, named James, granted, *Page 186 
bargained and sold to said William Miller nine slaves by name, one of whom was the slave Hezekiah, and all his household and kitchen furniture. And the deed concluded as follows: "The possession of whom and all which property I do hereby acknowledge is to be taken, and hereby do authorize to be taken by the said William Miller, his executors or administrators or assigns, whenever he or they may think proper. In witness whereof," c.
Lewis lived on a farm of Miller at the time of the execution of this deed, and continued to live there until the execution was levied. And he retained in his possession all the property mentioned in the, deed until after the bill was filed in this case. The slave Hezekiah was employed by him on a boat which he ran upon the James River and Kanawha canal, at the time the execution was levied; and the levy was made by the directions of Thomas Curd, who indemnified the sheriff.
Miller, in his bill, after setting out his title under the deed of the 27th of November 1835, charged that he had purchased the slave from Lewis for a valuable consideration, and paid for him, and that he was his property without any condition; and having made the sheriff, and Guerrant, Curd and Lewis, defendants, he asked for an injunction to restrain the sale; which was granted.
Curd, in his answer, said, that he was a surety of Lewis in the debt on which the execution issued; that Lewis had ever held possession of the slave Hezekiah, and was in possession and with him at the time of the levy. That he did not admit that Miller had purchased the slave from Lewis and given valuable consideration for him, but he insisted that the deed upon its face shewed that no valid and bona fide
sale of the property mentioned in said deed was made by Lewis to Miller; but the considerations therein mentioned *Page 187 
were in all the instances considerations executed, and were not at all valuable considerations and given for the property therein conveyed. And that Lewis having retained possession of the slave, the sale to Miller, even if fair in other respects, was fraudulent in law as to the creditors of Lewis.
No evidence other than the deed, as to the considerations therein mentioned, was introduced by either party.
The cause came on to be heard in June 1844, when the Court below perpetuated the injunction. Whereupon Curd applied to this Court for an appeal, which was allowed. Whilst the cause was pending in this Court, Miller died, and it was revived against his executors.
Lewis, the grantor in the bill of sale to the appellee of the 27th of November 1835, in the proceedings mentioned, having, notwithstanding his alleged absolute sale of the slave Hezekiah thereby conveyed, continued in the possession of the said slave, such continued possession raises the legal presumption that the sale was fraudulent as regards the creditors of Lewis; which presumption throws imperatively upon the appellee the whole burthen of proving the fairness and good faith of the transaction; and that cannot be done without sufficient evidence that the pretended sale was for a fair and valuable consideration; and in the absence of such evidence, the prima facie
presumption becomes absolutely and irresistibly conclusive.
No such evidence has been furnished by the appellee; on the contrary, the bill of sale itself contains no acknowledgment of a consideration actually paid by *Page 188 
the grantee to the grantor, or of an equivalent existing indebtedness from the latter to the former, but serves to shew upon its face mere gratuities and voluntary advancements, entirely compatible with the relation of father in law and son in law existing between the parties.
The registration of the bill of sale is an immaterial circumstance, as in this case it throws no light upon the question whether the alleged sale was fair and honest, or a fraudulent contrivance to defeat the creditors of the grantor. And the authority given to the grantee by the bill of sale to take possession of the property at pleasure amounts to nothing, it being no more than that which results from the absolute conveyance itself.
Nor is it material, the property being that of Lewis, the principal debtor, that the execution was levied thereupon at the instance of the appellant Curd the surety, instead of Guerrant the creditor; for the question still recurs, whether the sale was fair or fraudulent as regards the creditors of the grantor; and it cannot be doubted that the surety has a right to avail himself of the fraudulent character of the transaction, and in truth is, within the spirit of the statute, at least in a Court of equity, a creditor himself. There is no pretence on the part of the appellee that, as between him and the appellant, the latter is primarily bound for the debt, or that he stands in any other relation to it than that of a mere surety.
Decree reversed with costs; injunction dissolved, and bill dismissed with costs. *Page 189